UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

Case No. 24-cr-20667

v.

Hon. Denise Page Hood

D-1 Brian Maurice Brown,

Defendant.
______________________________/

**UNITED STATES' RESPONSE AND BRIEF IN SUPPORT OPPOSING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (ECF No. 183)**

For the reasons stated in the government's brief, the Court should deny Brian Brown's motion to suppress the evidence seized during the traffic stop of co-defendant Dominque Glenn on September 15, 2023.

Respectfully submitted,

JEROME F. GORGON JR.
UNITED STATES ATTORNEY

*s/ Caitlin B. Casey*
Caitlin B. Casey
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Caitlin.casey@usdoj.gov
(313) 226-9769

Dated: November 24, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

Case No. 24-cr-20667

v.

Hon. Denise Page Hood

D-1 Brian Maurice Brown,

Defendant.
_____________________________/

**UNITED STATES' BRIEF IN SUPPORT OPPOSING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

On September 15, 2023, DEA investigators observed Brian Brown outside his West Bloomfield stash house, loading a bag into the rear of a Chevrolet Traverse driven by co-defendant, Dominique Glenn. Glenn, the sole occupant of the Traverse, left the stash house and was stopped a short time later by the Michigan State Police. Glenn consented to a vehicle search. A drug dog also alerted to the presence of narcotics. Inside the vehicle, troopers located three kilograms of cocaine and $2,220 hidden in trap compartment under the rear seats.

Brown now seeks to suppress the cocaine and currency seized during the traffic stop. But Brown, who was neither the lawful owner of *nor* a passenger in the vehicle, has no Fourth Amendment standing to challenge the search because he did not have a legitimate expectation of privacy in the vehicle. And even if he did,

Glenn, as the driver, had authority to consent to the search. Moreover (and independent of Glenn's consent), the trooper had sufficient probable cause to search the vehicle based on DEA's ongoing investigation and after a properly trained drug dog alerted for the presence of narcotics. There is no basis for suppression. Brown's motion should be denied.

## I. BACKGROUND

*Initial Investigation into Brown and the West Bloomfield Stash House*

DEA Detroit began investigating Brian Brown and his drug trafficking organization after a confidential source (CS) came forward in May 2022 with information about Brown's ongoing drug trafficking activities. The CS told agents that Brown was working directly with the Sinaloa Cartel to import drugs into the United States. The CS knew that Brown managed numerous couriers and drug packagers in various distribution hubs throughout the country, including Detroit, and identified Dominique Glenn as a member of Brown's organization who stayed at or had access to a stash location in West Bloomfield, Michigan. (Ex. A, DEA ROI, at Bates_2335)

In early 2023, DEA began physically and electronically surveilling Brown and his co-defendants, Dominque Glenn and Zion Speed. Through this surveillance, investigators identified suspected stash locations frequented by Brown, Glenn, and Speed – including a condominium in West Bloomfield located

at 6624 Bellows Court, consistent with the CS's information.

Between March and September 2023, investigators repeatedly observed Brown, Glenn, and Speed at the West Bloomfield stash house at 6624 Bellows Court. For example, during the early morning hours of March 30, 2023, investigators observed Speed transporting a large box from another suspected stash location in Detroit to 6624 Bellows Court. (Ex. B, DEA ROI, at Bates_0482). Four days later, on April 4, 2023, DEA searched the trash located at the curb of 6624 Bellows Court and discovered multiple open food saver bags, latex gloves, and packaging for respirator masks. (Ex. C, DEA ROI, at Bates_0019). The recovered bags were field tested and tested positive for trace amounts of fentanyl, methamphetamine, and xylazine.

Similarly, on May 3, 2023, investigators observed Brown and Speed at 6624 Bellows Court. While Brown and Speed were inside, a black female resembling Glenn arrived in a Chevrolet Traverse bearing Michigan registration 0NTP89, registered to Joseph Dwain Dials (the same vehicle involved in the September 15, 2023 traffic stop). (Ex. D, DEA ROI, at Bates_0635-636). The black female then entered the residence. Less than 10 minutes later, Brown left the area, driving a silver Suburban. (*Id.*). The black female and Chevrolet Traverse remained at 6624 Bellow Court after Brown left. (*Id.*).

Additionally, in late June 2023, the CS conducted a controlled purchase of

fentanyl from Speed. Following the controlled purchase, investigators observed Speed travel to residences in Detroit and then to 6624 Bellows Court again. (Ex. E, DEA ROI, at Bates_0038).

*Glenn's Use of the Chevrolet Traverse*

Before the traffic stop on September 15, 2023, investigators repeatedly observed Glenn driving the Chevrolet Traverse. For instance, on May 15, 2023, investigators observed Glenn enter the Traverse while it was parked at an apartment complex in Detroit and move it to another location within the parking lot. (Ex. F, DEA ROI, at Bates_0538)

Further, on May 26, 2023, location data for Glenn's cell phone revealed that it traveled out of Michigan, stopped in Richmond, Virgina, and then continued on to the home of co-defendant Akia Brown (Brown's wife) in Acworth, Georgia. Agents with DEA Atlanta conducted a spot check at the residence and observed the Chevrolet Traverse parked in front of Akia Brown's home, consistent with Glenn driving the Traverse to Georgia. (Ex. G, DEA ROI, at Bates_0608). Based on phone location data, Brian Brown was not at the residence with Glenn or Akia Brown.

*MSP Traffic Stop on September 15, 2023*

Again, on September 15, 2023, investigators observed Glenn driving the Chevrolet Traverse as she backed into the driveway of the West Bloomfield stash

house at 6624 Bellows Court. (Ex. H, DEA ROI, at Bates_0051-54). Just after Glenn arrived, Brown walked out of the garage holding a black bag that he placed in the rear of the Chevrolet Traverse. (*Id.*).

While putting the bag in Traverse, investigators observed Brown to be moving items in the rear of the vehicle for several minutes. (*Id.*). At one point, Brown's feet were off the ground as he was moving items around in the rear of the vehicle. (*Id.*).



*Surveillance Image of Brown loading Traverse outside 6624 Bellows*

Just seven minutes after backing the Traverse into the driveway, Glenn departed, traveled to I-75, and headed northbound. (*Id.*). Investigators maintained surveillance on the vehicle, losing sight of Glenn only temporarily as she departed the condominium parking complex. (*Id.*).

While on I-75, an MSP trooper, who had been advised of DEA's investigation, observed the Traverse travel over the fog line twice and initiated a

traffic stop for improper lane use. (*Id*., at Bates_0052; *See also* Ex. I, MSP Report, at Bates_0048-50). The trooper spoke with Glenn, who was the driver and sole occupant. (*Id*.). Glenn provided expired insurance and told the trooper that the vehicle belonged to her "uncle," who allowed her to drive it. (Ex. J, Trooper Clarke Body Camera Video, 11:00-12:30). On scene, the trooper confirmed that the vehicle was registered to "Joseph Dwain Dials."

While speaking with Glenn, the trooper noted that Glenn appeared nervous and that her hands were shaking. (Ex. H, DEA ROI, at Bates_0052; Ex. I, MSP Report, at Bates_0049). Glenn also lied to the trooper and claimed that she was coming from a doctor's appointment in Dearborn and headed to a family member's home in Saginaw. (*Id*.).

The trooper asked Glenn for consent to search the Traverse, and Glenn agreed. (Ex. H, DEA ROI, at Bates_0053-54; Ex. I, MSP Report, at Bates_0049). The trooper deployed a certified drug-detecting canine, trained only to detect the presence of cocaine, crack, cocaine, heroin, and methamphetamine, to perform an exterior sniff of the vehicle. (Ex. K, Canine Creed Cert and Training Reports). The canine showed the most interest in the rear passenger side wheel well. (Ex. H, DEA ROI, at Bates_0053-54; Ex. I, MSP Report, at Bates_0049).

The canine then went inside the vehicle and alerted to the presence of an odor of narcotics between the rear passenger seat and the side panel. (*Id*.). In that

location, the trooper observed a bulge underneath the carpet, and after removing the rear seat and the carpet, the trooper found two trap doors. (*Id.*). Inside the trap compartment, troopers discovered three brick-shaped objects that tested positive for 3.031 kilograms of cocaine and $2,220. (*Id.*).

## II. Argument

### A. Brown does not have Fourth Amendment standing to challenge the search of the Traverse.

Before turning to the merits of Brown's Fourth-Amendment claims, the Court must determine the threshold issue of whether Brown has a legitimate expectation of privacy, also referred to as Fourth Amendment standing, in the item searched (i.e., a vehicle in which he was not present and that he does not lawfully own).

Fourth Amendment rights are personal rights which "may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34, (1978) (citations omitted). To have standing to challenge a car search under the Fourth Amendment, the defendant must "exhibit a legitimate expectation of privacy in the car at the time of the search." *United States v. Rogers*, 97 F.4th 1038, 1042 (6th Cir. 2024); see also *United States v. Washington*, 573 F.3d 279, 282 (6th Cir. 2009). An expectation of privacy exists when a person has a possessory or property interest in the place searched or items seized. *United States v. Davis*, 430 F.3d 345, 360 (6th Cir. 2005).

A defendant bears the burden of demonstrating that he has standing to

challenge a violation of the Fourth Amendment. *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). A defendant must demonstrate not only that he had a subjective expectation of privacy in the vehicle, but that the expectation is one that society is prepared to recognize as reasonable. *Rogers*, 97 F.4th at 1042 (quoting *Rakas*, 439 U.S. at 144).

Here, Brown fails to meet his burden. For starters, Brown does not have a possessory interest in the Traverse because he was not present at the time of the traffic stop. *See United States v. Elmore*, 304 F. 3d 557, 561 (6th Cir. 2002). Brown also makes no claim of possessory or proprietary interest in any items seized from the vehicle, including the cocaine and money. *See Davis*, 430 F.3d at 360 (defendant had no reasonable expectation of privacy in a vehicle he was not in, did not own, and denied having any association with the evidence recovered from it).

Further, Brown is not the owner of vehicle, although he now claims that his "uncle" is the registered owner and gave him "custody and control" of the vehicle. *See* ECF No. 183, PageID.1074. Notably, this claim is inconsistent with the information Glenn provided to the trooper on scene, identifying the vehicle as belonging to *her* uncle, not Brown.

Regardless, in *Rakas*, the Supreme Court held that a defendant who does not have either a lawful ownership interest or a possessory interest in a searched

vehicle at the time of the search does not possess a legitimate expectation of privacy that the Fourth Amendment will protect. 439 U.S. at 148-49. Further, in *United States v. Elmore,* a factually similar case from the Sixth Circuit, the appellate court reversed the district court's decision, finding that the defendant did not have an expectation of privacy in a vehicle that he was not in and he did not lawfully own, despite the defendant's claim of a proprietary interest in it. 304 F. 3d 557, 560-562 (6th Cir. 2002).

In *Elmore*, the defendant claimed he had a proprietary interest in the vehicle searched because he had given the registered owner the purchase money and expected that, at some point in the future, the registered owner would transfer the title of the car to him. *Id*. The Sixth Circuit found that while the defendant may have had a subjective expectation of privacy, that subjective expectation was not enough, as it was not one that society was prepared to recognize as legitimate. *Id.* at 562.

The same is true here. Brown's expectation of privacy in a vehicle that he was not in, does not lawfully own, and makes no claim to its contents is unreasonable. Brown does not have a legitimate expectation of privacy in the Traverse and therefore cannot challenge the search.

**B. Glenn, as the driver, has authority to consent to the search.**

Even if Brown could challenge the search, suppression is unwarranted

because Glenn freely consented to the search of the Traverse. While the Fourth Amendment protects citizens from unreasonable searches, a search is not unreasonable if an individual with a privacy interest in the item to be searched gives voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Valid consent may be provided by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974).

Under *Matlock*, the driver of a vehicle generally has apparent authority to consent to a search of the vehicle. *United States v. Morales*, 861 F.2d 396, 399-400 (3d Cir.1988); *United States v. Varona-Algos*, 819 F.2d 81, 83 (5th Cir.), cert. denied, 484 U.S. 929 (1987). The driver has immediate possession and control over the vehicle and ordinarily has access to all internal and external compartments, and therefore, it is reasonable to assume that the driver has authority to consent to a search. *United States v. Attar*, No. 89-5659, 1990 U.S. App. LEXIS 12450, at *2 (6th Cir. July 24, 1990).

Further, even if a driver did not have actual authority to consent, "a search is not invalidated where a police officer in good faith relies on what reasonably, if mistakenly, appears to be a third party's authority to consent to the search." *United States v. Sledge*, 650 F.2d 1075, 1080-81 (9th Cir. 1981); *United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir. 2007) ("a search consented to by a third party without

actual authority over the premises is nonetheless valid if the officers reasonably could conclude from the facts available that the third party had apparent authority to consent to the search"); *see also United States v. Miller*, 800 F.2d 129, 133-34 (7th Cir. 1986). Thus, a driver of a vehicle is presumed to have authority to consent to a search of the vehicle unless facts come to the inspecting officer's attention which would suggest that the driver's consent is invalid. *Attar,* 1990 U.S. App. LEXIS 12450*,* at *2*; see also United States v. Shanu*, 2000 U.S. App. LEXIS 10788 (6th Cir. 2000).

Brown does not dispute that Glenn voluntarily consented to the search of the Traverse. Rather, he alleges that she lacked both actual and apparent authority to consent. *See* ECF No. 183, PageID.1075. But it is well settled that the driver is presumed to have apparent authority to consent to the search of the vehicle. *Matlock*, 415 U.S. at 171; *Morales*, 861 F.2d at 399. Here, Glenn was not only the driver but also the sole occupant, and therefore she was the only person with immediate possession and control of the vehicle.

Further, Brown's claim that DEA "must have known" that Glenn did not have actual or apparent authority to consent is unfounded. *See* ECF No. 183, PageID.1076. While surveilling Brown and Glenn in the months before the traffic stop, DEA repeatedly saw Glenn driving the Traverse. In fact, DEA never saw Brown driving the Traverse.

Additionally, during the traffic stop, Glenn told the trooper that the registered owner (Joseph Dials) was her uncle and that he had given her permission to use the vehicle. (Ex. J, Trooper Clarke Body Camera Video, 11:00-12:30). Based on law enforcement's observations during the investigation and Glenn's statements, DEA and the MSP trooper certainly had a good faith basis to believe that Glenn had authority to consent to the search. *Ayoub*, 498 F.3d at 537. There was no Fourth Amendment violation.

**C. The warrantless search of the Traverse was also lawful under the automobile exception.**

Setting aside the lawful consent search, MSP's search was also proper under the automobile exception to the warrant requirement. Under the automobile exception, officers are permitted to conduct a warrantless search of a vehicle if the search is supported by probable cause. *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999). This search may include all compartments and containers in the vehicle. *United States v. Burns*, 298 F.3d523, 542 (6th Cir. 2002). Probable cause exists "when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003); see also *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). The determination of probable cause requires an examination of the objective reasonableness of the facts. *Whren v. United States*, 517 U.S. 806, 812 (1996). An officer's subjective intentions are irrelevant. *Id.*.; *see*

*also Smith*, 510 F.3d at 647-48.

Here, the troopers had probable cause to search the Traverse based on the totality of the facts and circumstances known to them at the scene. Before the traffic stop, investigators observed Brown, a known drug dealer, and Glenn meet at a suspected DTO stash location. Not only had a CS told investigators that Brown used a drug stash house in West Bloomfield that Glenn routinely accessed, but investigators had previously conducted a trash pull at the residence and recovered food saver bags that tested positive for fentanyl, methamphetamine, and xylazine, latex gloves, and packaging for respirator masks. Investigators also observed Brown and other co-conspirators sporadically access the house, consistent with it being used as a stash house.

Further, on the day of the traffic stop, investigators observed Glenn arrive at the stash house and meet with Brown for a matter of minutes – just long enough for Brown to load the Traverse (that Glenn had backed into the driveway) – before departing. The short duration of Glenn's visit, coupled with Brown's suspicious activity in the rear of the Traverse, supported investigators' belief that evidence of criminal activity may be found in the Traverse. *See United States v. James*, 575 F. App'x 636, 640 (6th Cir. 2014) (evasive action is one factor among the totality of the circumstances supporting probable cause); *see also United States v. Arnold*, No. 08-20556, 2009 WL 3101000, at *8 (E.D. Mich. Sept. 23, 2009), aff'd, 442 F.

App’x 207 (6th Cir. 2011) (Defendant’s evasive and suspicious behavior supports a finding of probable cause to search the vehicle). These observations were relayed to the MSP trooper who subsequently stopped the Traverse after also observing traffic violations. *See United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012) (the “collective knowledge” rule permits an officer to conduct a stop based on information obtained from fellow officers, imputing the investigating officer’s suspicions onto the responding officer even if the responding officer is wholly unaware of the specific facts).

After speaking with Glenn, the trooper deployed a certified drug-detecting canine, Canine Creed. (Ex. K, Canine Creed Cert and Training Reports). Creed performed an exterior sniff of the vehicle, showing the most interest in the rear passenger side wheel well. Inside the vehicle, Creed alerted to narcotics between the rear passenger seat and the side panel, where it was hidden in the trap.

Contrary to Brown’s claims, Canine Creed was not trained to detect the presence of marijuana. ECF No. 183, PageID.1078. Creed was a new canine who graduated from MSP’s Basic Canine School in July 2023 and continued to receive training until the date of the traffic stop. (Ex. K.) Creed was trained to detect only the presence of heroin, methamphetamine, cocaine, and crack cocaine, and he properly did so here. Brown’s attempt to undermine the canine sniff fails. *See Florida v. Harris,* 568 U.S. 237, 246-47, (2013); *United States v. Whitley,* 34 F.4th

522, 536 (6th Cir. 2022) (a certified drug dog's positive alert was sufficient to establish probable cause); *United States v. Stubblefield,* 682 F.3d 502, 507 (6th Cir. 2012) (a trained drug-detection dog's alert establishes probable cause for the presence of a controlled substance).

Independent of Glenn's consent, the trooper also had probable cause to believe that the vehicle contained contraband or evidence of criminal activity. The evidence was properly seized.

## III. Conclusion

For the reasons above, the Court should deny Brown's motion to suppress the evidence.

Respectfully submitted,

JEROME F. GORGON JR.
UNITED STATES ATTORNEY

*s/ Caitlin B. Casey*
Caitlin B. Casey
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Caitlin.casey@usdoj.gov
(313) 226-9769

Dated: November 24, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2026, I electronically filed the forgoing document with the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of this filing to all counsel of record

*s/ Caitlin B. Casey*
Caitlin B. Casey
Assistant United States Attorneys

Date: November 24, 2026